## **Exhibit Index**

| Exhibit A | Dr. Ig-Izevbekhai's Religious Accommodation Form |
|---|---|
| Exhibit B | Dr. Ig-Izevbekhai's May 27, 2025, Right-to-Sue Letter from EEOC |
| Exhibit C | Minnesota Board of Pharmacy 1999 Meeting Minutes |





985 GENEVA AVE
OAKDALE, MN, 55128

Tel: 651-7318480

Fax: 651-7310522

Date: 04/19/2023

Time: 11:54:53 (CST)

Pages: 5

Attention: BERNARD

Message:

This communication is intended for the use of the person or entity to whom it is addressed and may contain information that is privileged and confidential, the disclosure of which is governed by applicable law. If the reader of this message is not the intended recipient, or the employee or agent responsible for delivering it to the intended recipient, you are hereby notified that any dissemination, distribution, or copying of this information is STRICTLY PROHIBITED. If you have received this message in error, please notify sender immediately.

EXHIBIT A

2023/04/19 11:54:35

1 of 4

# Walgreens

## Accommodation Request Form – Religious, Moral and/or Ethical Observances/Objections

Walgreens ("Company") respects the religious, moral and ethical beliefs and practices of all team members and will make, upon request, an accommodation for sincerely held beliefs and practices when a reasonable accommodation is available and does not impose an undue hardship on the business operation which includes ensuring that our customers' needs are promptly and completely satisfied. A team member whose religious, moral or ethical beliefs or practices conflicts with their job, work schedule, work policy or job requirements, or with other aspects of employment and who seeks an accommodation must promptly submit this Form to their manager and Employee Relations as part of the interactive process to determine whether the request can be reasonably accommodated. Walgreens may request additional information or documentation as part of the interactive process.

As with any documentation or information provided to the Company, team members must provide truthful and accurate information at all times. If a team member refuses to provide such information, the team member's refusal may impact the Company's ability to adequately understand the team member's request or effectively engage in the interactive process to identify possible accommodations.

**TO BE COMPLETED BY TEAM MEMBER:** (additional pages may be attached)

Name: Dorothy B. Ig-Izevbekhai
Employee ID: 1103973
Phone Number: 651-731-8480
Date of Request: 1/9/23

Job Title: Pharmacist / MTM Lead.
Location/Store Number: 03122
Email: dorothy.Ig-Izevbekhai@walgreens.com
Supervisor:

Describe your religious, moral and/or ethical belief(s), practice(s), or objection(s) that is the basis for your accommodation request?

I am a bible believing and practising Christian. The bible says that God made man in His image and made them male and female. He also said that our bodies are the temple of the Holy Spirit, not to be defiled or destroyed. The Bible says that God knew us even before we were born. Therefore, anything that alters life, destroys life or "disdains God's creation" is against my sincerely held belief of what the Bible, the word of God commands us and is against my sincerely held belief.

Please specify the work requirement that conflicts with the belief or practice above and explain the nature of the conflict.

- Administering or relieving any vaccines, medicines or foods made using human cells from abortion, assisted suicide or other fetal cell harvesting methods destroys life and is against my sincerely held belief.
- Dispensing any abortion causing or enhancing medications or devices like IUD, Plan B, other abortion prescription medications or OTC medications used for abortion destroys life according to Jeremiah 1V 4-5
- Dispensing gender mutilating or altering medications or devices intended for those purposes opposes the scripture that God created us male and female by Himself Genesis 5V2
- Selling cigarettes and alcohol which is known to Page 1 of 2 damage health or "destroy the body" works against God's Command not to destroy the temple of the Holy Ghost 1st Corinthians chp 3

EXHIBIT A

# Walgreens

Please describe the specific accommodation(s) that you are requesting at this time, including an explanation of how the requested accommodation(s) will enable you to meet your religious, moral or ethical obligations without impacting your ability to meet the required/essential functions of your job and if applicable the duration of the accommodation needed.

I am requesting to be granted an exception from
- recieving or administering Covid or other vaccines made with fetal tissues.
- dispensing abortion causing or enabling products
- gender altering medications or procedures, dispensing or enabling use of these medications and devices
- selling cigarettes and alcohol to customers

What are some other accommodation options that might address your needs?

Be allowed to politely refer or redirect requests to participate in these activities to others willing to.

### Verification and Accuracy

I verify that my religious, moral or ethical belief(s) or practice(s) that prompt(s) this request for a religious accommodation are sincerely held. By signing below, I verify the truth and accuracy of my statements on this form.

I understand that although the specific accommodation I have requested may not be granted, the Company will attempt to provide an accommodation that does not create an undue hardship for the Company if such an accommodation is available. I understand that any religious accommodation granted now may be reviewed periodically by the Company to ensure it is reasonable and does not create an undue hardship at a later date.

I understand that the Company prohibits retaliation for requesting a religious accommodation, and that if I should have any concerns about retaliation, I will report them immediately to Employee Relations.

Employee Signature: _[signature]_

Date: 01/09/23

### Summary of Next Steps

1. Review the Religious Accommodation Policy – Team Member Acknowledgement.
2. Submit the Accommodation Request Form to your manager and to Employee Relations via email yourhrsupport@hr.wba.com or fax 224-516-6006.
3. Following a collaborative process, you will be notified of the outcome by your manager.

3 of 4

# Walgreens

**Part 2 – To be completed by Team Member**

### Certification and Accuracy

I certify and attest to the following:

1. I certify that I am over eighteen (18) years of age and competent to make this attestation OR that my parent or legal guardian is making this attestation on my behalf.
2. I affirm and attest that I have a sincerely held religious belief which prevents me from receiving the COVID-19 vaccine.
3. I affirm and attest that my objections to the COVID-19 vaccine are due to my sincerely held religious belief and are **NOT** based on grounds of social, political, personal preference, or inconvenience.
4. I understand that an accommodation beyond the exemption requested above may not be granted, but that Walgreens will attempt to provide a reasonable accommodation that does not create an undue burden on Walgreens
5. I understand that Walgreens may need to obtain supporting documentation regarding my religious practice and beliefs to further evaluate my request for a religious accommodation.
6. I understand that religious accommodation requests may be periodically reevaluated or discontinued should it pose an undue burden on the business at a later date.
7. I understand that the Company prohibits retaliation for requesting a religious accommodation, and that if I should have any concerns about retaliation, I will report them immediately to Employee Relations.
8. I understand that falsifying or misrepresenting information on this form is serious misconduct, and that it can lead to discipline up to and including termination of employment.
9. I understand that failure to comply with any approved accommodations and safety standards in place at my locations shall be grounds for disciplinary action, up to and including exclusion from the workplace without pay or termination of employment.

Employee Signature: _[signature]_     Date: 01/06/23

### Summary of Next Steps

1. Send the completed form to Employee Relations by emailing yourhrsupport@hr.wba.com.
2. Once received, your request will be acknowledged and discussed with you by your manager and/or Employee Relations.
3. Following an individualized review of the accommodation request and any supporting documentation, you will be notified of the decision.

3

EXHIBIT A

*From the Desk of Pastor Duane Hanson*

---

January 7th, 2023

To Whom it may concern,

I have been contacted by Dr. Dora Ig-Izevbekhai, who is a member of our congregation at Foundations Christian Fellowship. She has requested that I provide her with this letter regarding a religious exemption from participating in activities that she believes would violate her religious beliefs.

Dr. Dora is a Bible believing Christian and considers the Bible to be the living Word of God, which is inspired, inerrant, and the absolute Truth that governs the life of the Believer. As her pastor, I can speak to the genuineness of her faith, and her sincere desire to avoid involvement in any activities that compromise that faith.

Our church teaches that each believer in Christ receives the Holy Spirit, who directly leads the individual in their walk with The Lord. Through lengthy discussions with her family, times of prayer and searching the Scriptures, Dr. Dora has endeavored to discern truth from error. Consequently, she has the confidence that she is following her heart in this decision to apply for a religious waiver.

Our church believes that every Christian should follow their conscience, as informed by the written word of God, and the leading of the Holy Spirit.

Our church also teaches the Biblical sanctity of human life, and the Biblical definition of abortion as "the shedding of innocent blood." Many Christians understand this prohibition to include the avoidance, and rejection of any products derived from or using aborted fetal cell lines.

Dr. Dora believes that if she were forced to perform certain duties that involve these practices, she would consider such participation as an act of disobedience to the Scriptures and The Lord Jesus Christ.

Our church supports Dr. Dora Ig-Izevbekhai as she follows the leading of the Holy Spirit and we support her request for a religious exemption.

In His Service,

*Pastor Duane Hanson*

Pastor Duane Hanson
Foundations Christian Fellowship

---

**Established Heart Ministries**
P.O. Box 16009
St. Paul, MN 55116

**Foundations Christian Fellowship**
18112 Judicial Way N. / Home Office
Lakeville, MN 55044

EXHIBIT A

# U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION

Nashville Area Office
220 Athens Way, Suite 350
Nashville, TN 37228
(629) 236-2240
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS ENCLOSED

Dr. Dora Ig-Izevbekhai
2855 Eagle Valley Circle
Woodbury, MN 55129

Re: Dr. Dora Ig-Izevbekhai v. WALGREEN CO.
    EEOC Charge Number: 444-2024-01462

The United States Equal Employment Opportunity Commission (EEOC) issued the enclosed Dismissal and Notice of Rights (Notice) in the above-referenced charge on the date reflected thereon. Specifically, on that date, EEOC sent you an email notification that EEOC had made a decision regarding the above-referenced charge and advised you to download a copy of the decision document from the Portal. Our records indicate you have not downloaded the Notice from the Portal. For your convenience, a copy of the Notice is enclosed with this letter.

Please note that if the Charging Party wants to pursue this matter further in court, Charging Party must file a lawsuit within 90 days of the date they receive the Notice. The 90-day period for filing a private lawsuit cannot be waived, extended, or restored by the EEOC.

I hope this information is helpful. If you have questions, please contact DAWN SMITH by telephone at (629) 236-2248 or email at DAWN.SMITH@EEOC.GOV.

Sincerely,

06/06/2025

DAWN SMITH
INVESTIGATOR

Enclosure

EXHIBIT B



**U.S. EQUAL EMPLOYMENT OPPORTUNITY COMMISSION**

Nashville Area Office
220 Athens Way, Suite 350
Nashville, TN 37228
(629) 236-2240
Website: www.eeoc.gov

## DISMISSAL AND NOTICE OF RIGHTS
(This Notice replaces EEOC FORMS 161, 161-A & 161-B)

Issued On: 05/27/2025

**To:** Dr. Dora Ig-Izevbekhai
2855 Eagle Valley Circle
Woodbury, MN 55129

Charge No: 444-2024-01462

EEOC Representative and email:   DAWN SMITH
Investigator
Dawn.Smith@eeoc.gov

### DISMISSAL OF CHARGE

The EEOC has granted your request that the agency issue a Notice of Right to Sue, where it is unlikely that EEOC will be able to complete its investigation within 180 days from the date the charge was filed.

The EEOC is terminating its processing of this charge.

### NOTICE OF YOUR RIGHT TO SUE

This is official notice from the EEOC of the dismissal of your charge and of your right to sue. If you choose to file a lawsuit against the respondent(s) on this charge under federal law in federal or state court, **your lawsuit must be filed WITHIN 90 DAYS of your receipt of this notice.** Receipt generally occurs on the date that you (or your representative) view this document. You should keep a record of the date you received this notice. Your right to sue based on this charge will be lost if you do not file a lawsuit in court within 90 days. (The time limit for filing a lawsuit based on a claim under state law may be different.)

If you file a lawsuit based on this charge, please sign in to the EEOC Public Portal and upload the court complaint to charge 444-2024-01462.

On behalf of the Commission,

Digitally Signed By: Phillip Bornefeld
05/27/2025
Phillip Bornefeld
Area Office Director

EXHIBIT B

**CC:**
Kim Metrick
Walgreen Co.
104 WILMOT RD STOP 144W
Deerfield, IL 60015

Incident Location
Walgreen Co.
985 GENEVA AVE N
Oakdale, MN 55128

Ana I Ochoa
Walgreens Co
104 WILMOT RD
Deerfield, IL 60015

Ryan Wilson
333 Washington Ave N., Ste 300-9078
Minneapolis, MN 55401

Please retain this notice for your records.

EXHIBIT B

Enclosure with EEOC Notice of Closure and Rights (01/22)

**INFORMATION RELATED TO FILING SUIT
UNDER THE LAWS ENFORCED BY THE EEOC**

*(This information relates to filing suit in Federal or State court **under Federal law**. If you also plan to sue claiming violations of State law, please be aware that time limits may be shorter and other provisions of State law may be different than those described below.)*

**IMPORTANT TIME LIMITS – 90 DAYS TO FILE A LAWSUIT**

If you choose to file a lawsuit against the respondent(s) named in the charge of discrimination, you must file a complaint in court **within 90 days of the date you *receive* this Notice**. Receipt generally means the date when you (or your representative) opened this email or mail. You should **keep a record of the date you received this notice**. Once this 90-day period has passed, your right to sue based on the charge referred to in this Notice will be lost. If you intend to consult an attorney, you should do so promptly. Give your attorney a copy of this Notice, and the record of your receiving it (email or envelope).

If your lawsuit includes a claim under the Equal Pay Act (EPA), you must file your complaint in court within 2 years (3 years for willful violations) of the date you did not receive equal pay. This time limit for filing an EPA lawsuit is separate from the 90-day filing period under Title VII, the ADA, GINA, the ADEA, or the PWFA referred to above. Therefore, if you also plan to sue under Title VII, the ADA, GINA, the ADEA or the PWFA, in addition to suing on the EPA claim, your lawsuit must be filed within 90 days of this Notice and within the 2- or 3-year EPA period.

Your lawsuit may be filed in U.S. District Court or a State court of competent jurisdiction. Whether you file in Federal or State court is a matter for you to decide after talking to your attorney. You must file a "complaint" that contains a short statement of the facts of your case which shows that you are entitled to relief. Filing this Notice is not enough. For more information about filing a lawsuit, go to https://www.eeoc.gov/employees/lawsuit.cfm.

**ATTORNEY REPRESENTATION**

For information about locating an attorney to represent you, go to:
https://www.eeoc.gov/employees/lawsuit.cfm.

In very limited circumstances, a U.S. District Court may appoint an attorney to represent individuals who demonstrate that they are financially unable to afford an attorney.

**HOW TO REQUEST YOUR CHARGE FILE AND 90-DAY TIME LIMIT FOR REQUESTS**

There are two ways to request a charge file: 1) a Freedom of Information Act (FOIA) request or 2) a "Section 83" request. You may request your charge file under either or both procedures. EEOC can generally respond to Section 83 requests more promptly than FOIA requests.

Since a lawsuit must be filed within 90 days of this notice, please submit your FOIA and/or Section 83 request for the charge file promptly to allow sufficient time for EEOC to respond and for your review.

**To make a FOIA request for your charge file**, submit your request online at https://eeoc.arkcase.com/foia/portal/login (this is the preferred method). You may also submit a FOIA request for your charge file by U.S. Mail by submitting a signed, written request identifying your request as a "FOIA Request" for Charge Number 444-2024-01462 to the

EXHIBIT B

Enclosure with EEOC Notice of Closure and Rights (01/22)

District Director at Delner Franklin-Thomas, 200 Jefferson Ave Suite 1400, Memphis, TN 38103.

**To make a Section 83 request for your charge file**, submit a signed written request stating it is a "Section 83 Request" for Charge Number 444-2024-01462 to the District Director at Delner Franklin-Thomas, 200 Jefferson Ave Suite 1400, Memphis, TN 38103.

You may request the charge file up to 90 days after receiving this Notice of Right to Sue. After the 90 days have passed, you may request the charge file only if you have filed a lawsuit in court and provide a copy of the court complaint to EEOC.

For more information on submitting FOIA requests, go to https://www.eeoc.gov/eeoc/foia/index.cfm.

For more information on submitted Section 83 requests, go to https://www.eeoc.gov/foia/section-83-disclosure-information-charge-files.

EXHIBIT B



# MINNESOTA BOARD OF PHARMACY

## SEVEN HUNDRED AND TWENTY SECOND MEETING

At approximately 8:00 a.m., June 22, 1999, the Board of Pharmacy met at the Minneapolis Convention Center in Minneapolis, Minnesota, for the purpose of administering a written practical examination in prescription compounding, errors and omissions, and patient counseling. All members of the Board, with the exception of Ms. Jean Lemberg and Mr. Charles Cooper, were in attendance. Also in attendance were the Board's Executive Director, Mr. David Holmstrom, and the Board's Pharmacy Surveyors, Mr. Lloyd Pekas, Ms. Candice Fleming, Mr. Leslie Kotek, and Mr. Byron Opstad.

The following candidates, who have met all of the required prerequisites and who have presented properly executed applications, were present to write the examinations administered as part of the full board examination process:

**CARNITA R. ALLEX**

**IRIS G. APOSTOL**

**CAROL L. ARENDS**

**GWENYTH R. BAUER**

**KIRSTEN L. BERG**

**ANDREA L. BISTODEAU**

**ANNETTE M. BRAND**

**ERIC M. BRANDRIET**

**ANDREW J. BRIGGS**

**JASON W. BROOKS**

**MELISSA K. CARLSON**

**GREGG A. CARLTON**

**MUYANG M. CHI**

**SCOTT T DALEIDEN**

**STEPHANIE M. DAVIS**

**COLLEEN A. DEVALK**

**MARK W. DEWEY**

**MEGAN M. DOWNEY**

**AARON E. DRAKE**

**JANEL J. EBNET**

**DENISE R. ENGEN**

**ANGELA K. ERICKSON**

**JULIE A. FIKE**

**LINDA E. FOGELBERG**

**SCOTT A. GAST**

**CORWIN A. GELLNER**

**EHAB B. GENDY**

**RAYMOND S. GLASER**

**MICHAEL P. GULSETH**

EXHIBIT C

KAYE D. HANSEN
WENDY L. HARMSEN
PEGGY S. HASELOW
KATHLEEN M. HAYES
SUSAN F. HELFTER
TERRY J. HEITPAS
DENNIS HOANG
MATTHEW D. HOLT
LE T. HONG
SHEILA J. JANZEN
KRISTEN F. JOHNSON
DANA J. JOHNSTON
JENIFER R. KALIS
SHANNON M. KAMPA
PATRICK T. KARL
KELLY J. KEENAN
JUDY M. KENNEDY
RUTH A. KLATT
KELLY L. KLEHR
JILL L. KRONGARD
DEANNA N. LARSON
SHIU C. LEE
STEPHANI S. LEFLORE
BRETT A. LEITCH
TODD D. LEMKE
SHARON R. LICHTER
CATHERINE I. LINDBLAD
HEATHER D. LINDEMAN
MICHELLE L. MALONE
AMY L. MATTSON
KIMBERLY A. MILLER
ANN S. MITCHELL
BRENDA J. NELSON
CANDACE T. NGUYEN
JULIE L. NORSTREM
KIMBERLY R. OSTENDORF
ERICA K. PAFFEL
KELLY M. PASCHKE
ANILKUMAR A. PATEL
BHAVIN P. PATEL
KIRSTEN M. PEDERSEN
MELISSA L. PETERSON
HOA T. PHAM
AMY J. PLATZ
REESE M. PUCKETT
REBECCA K. RASMUSSEN
AMANDA R. RHODE
CHRISTINE SANCHEZ

EXHIBIT C

MARA D. SATTER

SHARI C. SAURO

MEEGAN M. SCHAEFFER

SOHILA SEPEHRI

LANE K. SHELVER

SARAH J. SHOEMAKER

JENNIFER J. SKIFTON

STEVEN R. SOLEM

LEAH M. SOMMER

MICHELLE L. STEARNS

NICOLE M. STOWELL

STEPHANIE J. SVOBODA

AMANDA R. TATRO

DAVID A. TAYLOR

PHONEKEO THIRAKUL

KRISTY D. THOM

LOUIS P. TRAN

HEATHER S. VALITON

TRANG Y. VO

VYVY QUYEN K. VO

LORELI J. WESTBY

AMY M. WHITEHEAD

AMY J. WILLEY

JESSICA A. WILSON

MIJA YOON

JAMIE L. ZACHER

The following retake candidates were also present to write the examination:

DAVID A. COOPER
VIRAJ V. GANDHI
LARRY D. HEINERT

Also present to write the examination was Mr. Lester Schriever, a candidate for reinstatement of his license to practice pharmacy in Minnesota, which he had previously allowed to lapse.

At approximately 8:30 a.m., June 23, 1999, the Board met in Conference room A, at the University Park Plaza Building, 2829 University Avenue Southeast, Minneapolis, Minnesota, for the purpose of conducting a general business meeting. All members of the Board were in attendance, with the exception of Ms. Jean Lemberg and Mr. Charles Cooper. Also in attendance were the Board's Executive Director, Mr. David Holmstrom and the Board's Legal Counsel, Mr. Robert Holley. In the absence of Mr. Cooper, Vice President Jeff Lindoo chaired the meeting.

After reviewing and approving the agenda for this meeting, the Board addressed the minutes of the meeting of April 28, 1999. Mr. Carl Benson moved and Ms. Denise Frank seconded that the minutes of the meeting of April 28, 1999 be approved as written. The motion passed.

The Board next turned its attention to applications to conduct new pharmacies, which it has received since its last meeting. The first such application was submitted on behalf of Pharm Care LLC in Elbow Lake, Minnesota, by Mr. Paul Swan, pharmacist-in-charge. After carefully reviewing this application and a diagram of the proposed pharmacy, Ms. Denise Frank moved and Mr. Carl Benson seconded that the application be approved and a license issued subject to the successful completion of an on-site inspection, by a member of the Board's staff, to assure compliance with Pharmacy Board rules dealing with licensure. The motion passed.

The second application, to be considered by the Board, was submitted on behalf of Rainbow Pharmacy in Blaine, Minnesota, by Mr. Richard Hayes, pharmacist-in-charge. After carefully reviewing this application and a diagram of the proposed pharmacy, Mr. Carl Benson moved and Ms. Denise Frank seconded that the application be approved and a license issued, subject to the naming of a permanent pharmacist-in-charge for the pharmacy, and subject also to the successful completion of an on-site

EXHIBIT C

inspection, by a member of the Board's staff, to assure compliance with Pharmacy Board rules dealing with licensure. The motion passed.

The third application to conduct a new pharmacy, to be reviewed by the Board, was submitted on behalf of <u>Rainbow Pharmacy in St. Paul, Minnesota, by Mr. Richard Hayes, pharmacist-in-charge</u>. After carefully reviewing this application and a diagram of the proposed pharmacy, Mr. Don Gibson moved and Ms. Carol Peterson seconded that the application be approved and a license issued, subject to the naming of a permanent pharmacist-in-charge for the pharmacy, and subject also to the successful completion of an on-site inspection, by a member of Board's staff, to assure compliance with Pharmacy Board rules dealing with licensure. The motion passed.

The fourth application to conduct a new pharmacy, to be reviewed by the Board, was submitted on behalf of <u>Snyder Rx Express in McGregor, Minnesota, by Mr. Patrick Holder, pharmacist-in-charge</u>. After carefully reviewing this application and a diagram of the proposed pharmacy, Ms. Carol Peterson moved and Mr. Don Gibson seconded that the application be approved and a license issued, subject to the naming of a permanent pharmacist-in-charge for the pharmacy, and subject also to the successful completion of an on-site inspection, by a member of Board's staff, to assure compliance with Pharmacy Board rules dealing with licensure. The motion passed.

The fifth application to conduct a new pharmacy, to be reviewed by the Board, was submitted on behalf of <u>Twin Cities Compounding Pharmacy in St. Paul, Minnesota, by Mr. Peter Bell, pharmacist-in-charge</u>. After carefully reviewing this application and a diagram of the proposed pharmacy, Ms. Denise Frank moved and Mr. Carl Benson seconded that the application be approved and a license issued. The motion passed.

The sixth application to conduct a new pharmacy, to be reviewed by the Board, was submitted on behalf of <u>Kmart Pharmacy in International Falls, Minnesota, by Mr. Brett McCabe, pharmacist-in-charge</u>. After carefully reviewing this application and a diagram of the proposed pharmacy, Ms. Denise Frank moved and Mr. Carl Benson seconded that the application be approved and a license issued, subject to the naming of a permanent pharmacist-in-charge for the pharmacy, and subject also to the successful completion of an on-site inspection, by a member of the Board's staff, to assure compliance with Pharmacy Board rules dealing with licensure. The motion passed.

The seventh application to conduct a new pharmacy, to be reviewed by the Board, was submitted on behalf of <u>Walgreens Pharmacy in Inver Grove Heights, Minnesota, by Mr. Mark Schoolman, pharmacist-in-charge</u>. After carefully reviewing this application and a diagram of the proposed pharmacy, Ms. Denise Frank moved and Mr. Carl Benson seconded that the application be approved and a license issued. The motion passed.

Mr. Holmstrom next provided, to the Board, a letter from <u>Mr. Gary Boehler, Vice President of Pharmacy at Thrifty Drug Stores, Inc.</u>, requesting that Thrifty White Pharmacy, in Hastings, Minnesota, which is in the process of acquiring Eddy's Pharmacy, also in Hastings, Minnesota, be allowed to operate both pharmacies under a single license for a period of six to eight weeks while construction of a new pharmacy for Thrifty White is being completed. After discussing this issue, during which Mr. Jeff Lindoo absented himself from the meeting room, Mr. Carl Benson moved and Mr. Don Gibson seconded that Mr. Holmstrom inform Mr. Boehler that the Board will not permit two locations to operate as licensed pharmacies under a single license. The motion passed.

Mr. Holmstrom next presented, to the Board, a letter from <u>Mr. Keith Sadowsky, District Pharmacy Manager for Omnicare Pharmacy-Twin Cities</u>, requesting that the Board approve an expansion of Omnicare Pharmacy-Twin Cities, and that the Board approve motion detectors covering the additional area as adequate coverage of the added square footage, rather than the addition of a physical barrier between the suspended ceiling and roof deck on the outside wall of the pharmacy. After a brief discussion, Mr. Donald Gibson moved and Ms. Denise Frank seconded that Mr. Sadowsky's request be approved. The motion passed.

The Board next discussed whether it should establish a standing Pharmacy Technician Advisory Committee and, if so, how that committee should be structured. At the conclusion of the discussion, Mr. Holmstrom was directed to get additional information from the Board's of Dentistry and Medical Practice, in Minnesota, to attempt to obtain additional information from NABP and from other states, and to place discussion of this issue on the agenda for the District V Meeting of the Boards and Colleges, being held in August. The Board will then discuss the issue further at a future meeting.

The Board next addressed itself to the performance of the candidates for licensure by reciprocity, who have taken the Reciprocity Jurisprudence Examination since the Board's last meeting. After a thorough review of the performance of the candidates for licensure by reciprocity, Ms. Carol Peterson moved and Ms. Denise Frank seconded that, having passed the Jurisprudence Examination, required of candidates for licensure by reciprocity, the following candidates be granted such licensure based on their current license to practice in the state listed with their name:

| CERTIFICATE # | NAME | STATE OF ORIGINAL LICENSURE |
|---|---|---|
| 7182 | EVAN B. VARGA | IA |
| 7319 | HEATHER B. SORRICK | WA |
| 7320 | JAYSON VERDICK | WI |
| 7322 | JOHN D. GUSTAFSON | IL |
| 7323 | PAMELA J. GUSTAFSON | IL |
| 7324 | GORDON A. SEIM | IL |
| 7325 | SHELBY A. SETNIKER-ESCHITI | OK |
| 7326 | LISA A. EHELE | SC |

The Board next turned its attention to setting of examination and meeting dates for the first half of the Year 2000. The following schedule of meetings was adopted.

EXHIBIT C

January 25, 2000 Board Examination

January 26, 2000 Business Meeting

March 15, 2000 Business Meeting

April 26, 2000 Business Meeting

May 6-10, 2000 NABP Annual Meeting

June 6, 2000 Board Examination

June 7, 2000 Business Meeting

While discussing dates for future meetings, the Board acted to change the date of the October 1999 Business Meeting from October 20 to October 27.

The Board next turned its attention to matters of a quasi-judicial nature. The first item of a quasi-judicial nature, to be presented to the Board, was a presentation, by Mr. Holley, of a proposed stipulation and order in the matter of the pharmacist license of Mr. Daniel Astrup. The stipulation was developed subsequent to a conference held with Mr. Astrup on June 10, 1999, to discuss allegations of unprofessional conduct and of violations of Mr. Astrup's previous probation with the Board. The stipulation has been agreed to and signed by Mr. Astrup. Mr. Astrup now personally appeared before the Board to discuss the proposed stipulation and order. After discussing the proposed stipulation and order with Mr. Astrup, Mr. Carl Benson moved and Ms. Denise Frank seconded that the Board accept the stipulation and order, as proposed, and that Mr. Holmstrom be directed to sign the stipulation and order on the Board's behalf. The motion passed.

At this time, Mr. Jeff Prosch, Executive Director of the Care Alliance Pharmacy, appeared before the Board to discuss a Tech-Check-Tech proposal, proposed for the unit-dose packaging system in use at Care Alliance Pharmacy. After hearing from Mr. Prosch and reviewing the safeguards contained in the Tech-Check-Tech proposal put forward by Mr. Prosch, Mr. Donald Gibson moved and Ms. Denise Frank seconded that the Board authorize Mr. Prosch to proceed with the Tech-Check-Tech Project for a one year period of time, and to report back to the Board on his progress at three month intervals. The motion passed.

At this time, Mr. Ray Vellenga, the Minnesota pharmacist who heads up the Pharmacy Technician Training Program at Century College in White Bear Lake, Minnesota, appeared before the Board to discuss the technician training program at Century College and other community and vocational colleges throughout the area. Mr. Vellenga graciously volunteered to provide the Board with information on the education and training received by pharmacy technician students at the Century College program, in order to give the Board a better idea of the background of pharmacy technicians graduating from the program. After discussing pharmacy technician training curriculum with Mr. Vellenga, the Board thanked him for his input and Mr. Vellenga left the meeting.

` The Board next began a discussion of what its expectations are of pharmacists who, because of their personal beliefs, refuse to fill certain prescriptions, such as those for the recently marketed "morning-after" pill. After a lively discussion, the Board took the position that a pharmacist has an obligation to either fill the prescription, or provide an alternative for the patient for getting the prescription filled by another staff person, or at another pharmacy. Further, employee pharmacists must discuss their concerns about filling these types of prescriptions ahead of time with their management, so that staffing arrangements or arrangements with other pharmacies can be made ahead of time.

The Board next turned its attention to continuing education programs, submitted to and reviewed by the Continuing Education Advisory Task Force between the dates of March 24, 1999 and April 27, 1999. After reviewing the list of programs submitted to and reviewed by the Continuing Education Advisory Task Force, Mr. Don Gibson moved and Mr. Carl Benson seconded that those programs recommended for approval be so approved, and that those programs for which denial of approval was recommended be denied. The motion passed.

The Board next turned its attention to variance requests that have been submitted to the Board since its last meeting. The first request for a variance was submitted on behalf of Albany Apothecary in Albany, Minnesota, by Mr. Will Seiler, pharmacist-in-charge. Mr. Seiler is requesting an extension of a previously granted variance that allowed him to provide pre-packaged antibiotics and comfort medications to clinics in nearby communities that are not currently serviced by a licensed pharmacy. Mr. Carl Benson then moved and Ms. Denise Frank seconded that the previously granted variance be renewed for a one year period of time. The motion passed.

The second variance request, to be considered by the Board, was submitted on behalf of Chronimed Pharmacy, by Ms. Lori Dickson, pharmacist-in-charge. Ms. Dickson is requesting an extension of a previously granted variance relating to the layout of Chronimed Pharmacy and the authority of non-pharmacist personnel to work in one section of the licensed area, where they would have access to computers, but not to prescription drugs. Non-professional personnel in this area include billing specialists who perform clerical and financial functions, and customer service representatives who answer phone calls and assist customers with non-professional questions. Mr. Don Gibson then moved and Ms. Carol Peterson seconded that the previously granted variance be extended for an additional two year period of time.

The next request for a variance, to be considered by the Board, was submitted on behalf of Dakota Treatment Center Pharmacy by Ms. Kathleen Ivanov, pharmacist-in-charge. Ms. Ivanov is requesting an extension of a previously granted variance relating to an exemption from the requirement for keeping prescription balances, weights, mortars and pestals, etc., as minimum equipment in the pharmacy; an exemption from a physical barrier between the drop ceiling and the roof deck around the perimeter of the pharmacy; acceptance of a procedure which allows patients to obtain medication without a pharmacist being on duty in cases of an emergency; and an exemption from performing DUR for each patient at each visit. Mr. Don Gibson then moved and Ms. Carol Peterson seconded that the requested variances be extended for an additional one year period of time. The motion passed.

The next request for a variance was submitted on behalf of Duluth Clinic West Pharmacy by Mr. Tim Ferch, pharmacist-in-charge. Mr. Ferch is requesting a variance that would allow him to move two refrigerators currently used to store legend drugs requiring refrigeration to a space just outside of the licensed area of the pharmacy. Mr. Ferch maintains that additional refrigeration is needed and a new refrigerator unit would replace the two that are being moved. The two refrigerators they move would be

EXHIBIT C

locked, with keys available only to pharmacists and would be located immediately outside of a rear door to the licensed area. Mr. Carl Benson then moved and Ms. Carol Peterson seconded that the request, by Mr. Ferch, be denied at this time, and that Mr. Holmstrom contact him requesting that he re-explore all alternatives for keeping the refrigerators within the licensed area, but if all other options are exhausted, the Board will re-consider its decision. The motion passed.

The next request for a variance was submitted on behalf of Fairview Pharmacy Services in St. Paul, Minnesota, by Mr. Bill Schommer, Regional Manager. Mr. Schommer is requesting that a variance, that would allow Fairview Pharmacy in Eagan to utilize an automated drug dispensing system at the Cedar Ridge Clinic, also in Eagan, in the same manner as the Fairview Highland Park Pharmacy utilizes the ADDS at the Health Works clinic in St. Paul. Mr. Donald Gibson then moved and Mr. Carl Benson seconded that Mr. Schommer's request be approved for a one year period of time, on condition that drugs being dispensed at the remote site be labeled first and then scanned for the bar code, that staff at the remote site be registered with the Board as pharmacy technicians, and that no medications be dispensed without counseling by the pharmacist. The motion passed.

The next request for a variance was submitted on behalf of Johnson Memorial Health Services Pharmacy by Ms. Janet Fenske, pharmacist-in-charge. Ms. Fenske is requesting an extension of a previously granted variance that allows one nurse/technician to assist the pharmacist in surveying pharmacy stock in outlying areas in the hospital for outdates, assisting with inventory and return of merchandise, assisting with ordering and checking in drug orders, and assisting with billing. This variance, according to Ms. Fenske, allows her to spend her time in the facility on delivering direct pharmacy services to patients. Mr. Carl Benson then moved and Ms. Denise Frank seconded that the previously granted variance be extended for an additional one year period of time, but that Mr. Holmstrom suggest to Ms. Fenske that they consider a security camera for the pharmacy, so that the Pharmacist has a record of the technicians' activities during the times when the pharmacist is not physically present in the pharmacy. The motion passed.

The next request for a variance, to be considered by the Board, was submitted on behalf of Minnesota Veterans Home Pharmacy by Mr. Tom Mullon, Administrator. Mr. Mullon is requesting a variance to the rule that specifies that only a pharmacist may have proper access to the pharmacy at all times. Mr. Mullon is requesting that the Board authorize a key to the pharmacy to be maintained in the Administrator's office for use in emergencies. The Board did not act on this request for a variance, in that the request did not come from the pharmacist-in-charge of the pharmacy. The Board directed Mr. Holmstrom to contact the pharmacist-in-charge regarding this issue.

The next request for a variance, to be considered by the Board, was submitted on behalf of Pipestone County Medical Center Pharmacy by Mr. Donald Spawn, pharmacist-in-charge. Mr. Spawn is requesting an extension of a previously granted variance which allows the pharmacy technician to accompany a designated registered nurse into the secured area of the pharmacy, when the pharmacist is not present, for purposes of expediting that nurse's determination of whether the ordered dose of a drug is stocked in the pharmacy, and where it is located. Ms. Denise Frank then moved and Mr. Don Gibson seconded that the previously granted variance be extended for an additional one year period of time. The motion passed.

The next request for a variance, to be considered by the Board, was submitted on behalf of Thrifty White Pharmacy in Fergus Falls, by Mr. Robert Hubbes, pharmacist-in-charge. This variance request was considered by the Board at its April meeting and was denied. Ms. Phyllis Schmid, of the Lakeland Hospice Program now appeared before the Board to request that the Board reconsider its decision and allow Lakeland Hospice nurses to keep emergency boxes of multiple drugs, including controlled substances, in their homes and vehicles, in order to expedite the availability of these drugs for hospice patients. Ms. Schmid now appeared before the Board to discuss the issues involved.

Ms. Schmid indicated that Thrifty White Pharmacy, in Fergus Falls, is "on call" 24 hours a day, but that, since the hospice nurses cover all of Ottertail County, it is sometimes a lengthy drive into Fergus Falls to obtain the needed medications and then back out to the residence of the patient.

Ms. Schmid acknowledged that physicians could anticipate the use of the various medications she is requesting be placed in the emergency kit and could, instead, prescribe them and have them available at the home of the patient, but Ms. Schmid indicated that there have been two cases within the past six months of family members stealing the patient's drugs. At the conclusion of the discussion with Ms. Schmid, the Board declined again to approve the variance request and suggested that Ms. Schmid contact the Drug Enforcement Administration regarding the issue of whether nurses would legally be allowed to possess stock supplies of controlled substances under federal law, since they do not qualify for registration as under DEA rules. Ms. Schmid was encouraged to get back in contact with the Board after discussing this issue with DEA.

The next request for a variance was submitted on behalf of Maplewood Pharmacy, by Ms. Linda Benson, Director of Pharmacy Systems for HealthEast. HealthEast owns Maplewood Pharmacy and, as a result, Ms. Benson is responsible for the operation of Maplewood Pharmacy, but is not on duty at the pharmacy. Ms. Benson indicates that HealthEast is having a difficult time identifying a pharmacist to be pharmacist-in-charge at Maplewood Pharmacy and is requesting the Board to grant a variance that would allow her to be on record with the Board as the pharmacist-in-charge. Ms. Denise Frank then moved and Mr. Carl Benson seconded that the Board grant the variance, requested by Ms. Benson, but that she be encouraged to find a pharmacist-in-charge regularly employed in the pharmacy as soon as possible. The motion passed.

Mr. Holmstrom next presented, to the Board, an issue raised by Ms. Candice Fleming regarding previously granted variances to Red Wing Corner Drug in Red Wing, Minnesota, and to Goltz Pharmacy in Winona, Minnesota, allowing nurses, employed as pharmacy technicians, to take verbal orders from physicians during the Pharmaceutical Care Project, with which both pharmacies were involved. The Pharmaceutical Care Project has now ended, but the nurses are still employed as technicians and are still taking verbal orders from physicians, without having had the Board review and approval of a continuance of the previously granted variances. After a brief discussion, the Board directed Mr. Holmstrom to write to the pharmacists-in-charge, at Red Wing Corner Drug and at Goltz Pharmacy, and inform them that they will need to re-apply for their variances if they wish to continue to use their nurse/technicians in this manner.

The final request for a variance, to be considered by the Board, was submitted on behalf of St. Francis Regional Medical Center Pharmacy in Shakopee, Minnesota, by Ms. Judith Quinn, pharmacist-in-charge. Ms. Quinn is requesting an extension of a previously granted variance allowing St. Francis Regional Medical Center Pharmacy to provide pre-packaged medications for physician dispensing at the affiliated urgent care clinic in Chaska, Minnesota. After a brief discussion, Mr. Donald Gibson moved and Mr. Carl Benson seconded that the previously granted variance be extended for an additional one year period of time, but that Ms. Quinn be requested to review the list of

EXHIBIT C

medications being pre-packaged, to eliminate those not often needed or used, and that some consideration be given to the possibility of technology, such as the automated drug dispensing system utilized by pharmacies as a substitute for the pre-packaging system currently in use. The motion passed.

Mr. Holmstrom next provided the Board with copies of guidelines on the use of off-site robotics for assembly of prescriptions and guidelines for automated medication storage and distribution systems that have been developed by Board of Pharmacy Surveyors. The Board acted to approve both sets of guidelines and commended the Board Surveyors for their work in developing these guidelines. Further, the Board suggested that the surveyors develop guidelines for the use of automated drug distribution systems like the one being used by Fairview pharmacies.

Mr. Holmstrom next provided the Board with a letter he received from <u>Pharmacist Thomas Mio, at Lakewood Health Center Pharmacy, and Stuart Noble, of Noble Drug, both in Baudette, Minnesota</u>. According to the letter, Lakewood Health Center Pharmacy compounds all IV's for use in the Baudette area because they have the only laminar flow hood available. When Noble Drug receives an order for home IV's, the pharmacist, at Noble Drug, will call the pharmacist at Lakewood and the pharmacist at Lakewood will compound the solutions needed. If Noble Drug does not carry the needed supplies, Lakewood will sell them to Noble Drug at AWP, less 10%, or Noble Drug will replace Lakewood's stock as soon as the product is obtained. All insurance and patient billing is done by Noble Drug. The compounding at the hospital is provided without charge to Noble Drug, to ensure sterility of product for area patients. If the pharmacist at Lakewood is on vacation when an IV drug is needed, the pharmacist from Noble Drug has access to the hospital's laminar flow hood and is responsible for compounding the home IV's. Both pharmacists are inquiring about the legality of this type of arrangement.

After discussing the issue, the Board was unable to arrive at a decision and directed Mr. Holmstrom to forward the issue to the Federal State Liaison at the Food and Drug Administration in Washington, D.C., for an opinion.

The Board next conducted a review of the NABP Annual meeting in Albuquerque, New Mexico, which the Board members attended, and discuss the various issues raised, including the new federal requirement for reporting disciplinary actions to a federal database.

The Board next discussed the upcoming District V meeting of the Boards and Colleges, scheduled for August 19 - 21, in Duluth, Minnesota, and the arrangements that are being made for the hosting of that meeting.

There being no further business at this time, the meeting was adjourned at approximately 2:45 p.m.

_____
VICE PRESIDENT

    _____
    EXECUTIVE DIRECTOR

EXHIBIT C